IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BOBBY R. GILBERT, #143087,           :

    Plaintiff,                                   :

vs.                                                     :     CIVIL ACTION 18-0320-TM-N

JESSICA MILLER, *et al.*,                 :

    Defendants.                            :

REPORT AND RECOMMENDATION

Plaintiff Bobby R. Gilbert, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint based on diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332(a). This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(b). After careful review, it is recommended that this complaint be dismissed without prejudice for lack of subject matter jurisdiction.

I.   Nature of Proceedings and Complaint's Allegations.

Because Plaintiff is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), the Court is required to screen his complaint prior to service of process according to 28 U.S.C. § 1915(e)(2)(B). During the course of screening, a complaint is subject to being dismissed if it is "frivolous or malicious; fails to state a claim upon

which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i-iii). Not only may a complaint be dismissed pursuant to this statute at this point in the proceedings, but any complaint brought by any plaintiff is subject to being dismissed if it fails to invoke this Court's subject matter jurisdiction. *Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir. 1992) ("a court *sua sponte* can raise a jurisdictional defect at any time"); *see Taliaferro v. United States*, 677 F. App'x 536, 537-39 (11th Cir.) (unpublished) (affirming the district court's *sua sponte* dismissal of a *pro se*, non-prisoner's complaint against the IRS pursuant to 28 U.S.C. § 1915(e) and for lack of subject matter jurisdiction),1 *cert. denied*, 138 S.Ct. 338 (2017).

In light of the Court's foregoing responsibilities, the Court will examine the complaint's allegations which are described as a fraudulent "pen-pal scam to exploit inmates." (Doc. 1-1 at 1). Plaintiff Bobby Ray Gilbert[2] sued Jessica M. Miller of Oxford, Indiana, Alina Pride of Brooklyn, New York, and DeathMerchant.net, their online business. (Doc. 1 at 1). According to Plaintiff, Defendant DeathMerchant.com is "a commercial enterprise dealing in the sale of prisoner related items, called true crime

---

[1] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

[2] The other Plaintiff, Phillip Tomlin, who is listed in the style of the complaint, but who did not sign the complaint, was deemed by the Court not to be a plaintiff to this action, and he was ordered to file a separate action. *See* Doc. 5 (order dated August 29, 2018); *see also Hubbard v. Haley*, 262 F.3d 1194, 1198 (11th Cir.) (finding only one prisoner plaintiff may proceed in an *in forma pauperis* under the PLRA), *cert. denied,* 534 U.S. 1136 (2002).

collectables." (*Id.* at 2). Defendants Miller and Pride are the administrators of the internet-based business, with Defendant Miller being the registered owner and primary administrator and being ultimately responsible for the content, and with Defendant Pride being the secondary administrator and being responsible for all items, libelous entries, and stolen goods represented as being hers. (*Id.* at 2-3).

Plaintiff maintains that the inventory listed for sale on Defendant DeathMerchant.com was acquired through various means, such as pen-pal writing, false pretense, theft by deception, or verbal contracts, and was placed there by Defendants without the rightful owners' knowledge or approval. (*Id.* at 3). The inventory of true crime collectables consists of personal correspondence written by prisoners, "artwork, photos, prison issued IDs, hand tracings, legal documents, craft items, clothing, hair, and various other items[.]" (*Id.* at 4). The inmates who are targeted by Defendant Miller have received "sufficient" media coverage for their crimes so she can profit from the inmate's name recognition with the public. (*Id.*). Defendant Miller writes to inmates and their families and includes a photo of another woman who is identified as being her or Defendant Pride in order to ensure a response. (*Id.* at 5). The response is then advertised for sale on Defendants' social media pages, such as Facebook and Tumblr, without the author's permission or knowledge. (*Id.*). Defendants also attempt to establish romantic relationships with, and solicit telephone calls from, targeted inmates for the purpose of recording, without the inmate's knowledge or authorization, the

conversations so the calls can be used to promote their website or be placed on the internet. (*Id*.). And Defendants contact the targeted inmates' family members under the premise of being romantically involved with the inmate in order to "scam" the family into sending photographs depicting the inmate's childhood and family, articles of the inmate's clothing, or other items, which can then be placed on the website and be represented as belonging to the inmate. (*Id.* at 6). When Defendant DeathMerchant.net lists these items for sale, a short biography of the inmate accompanies the listing and describes "often grossly exaggerated or outright fabricated account[s] of crimes committed by that inmate." (*Id*.). This causes emotional distress for the victims' loved ones, punishment of the inmates by prison officials, and publication of articles by the media. (*Id*.).

Plaintiff maintains that Defendant Miller in a telephone call to his elderly mother manipulated her into disclosing her social security number, which was then used to establish various online accounts in his mother's name. (*Id*.).

When an inmate requests the return of property or removal of his name from the website, Defendants either ignore the request or insult and threaten the inmate. (*Id.* at 7). Once, when an inmate threatened legal action if his name was not removed, Defendant Miller paid inmates to assault him and posted a video of the assault on her YouTube channel as a warning. (*Id.* at 6). And, when Plaintiff sought to resolve his issues with Defendants, he received insults and slanderous remarks from Defendants.

(*Id.* at 7). Then, when Plaintiff obtained legal representation on these issues, Defendants harassed his attorney and her family and clients causing her to terminate her representation. (*Id.*).

Plaintiff claims that for over nine years, Defendants Miller and Pride have "toyed with the emotions of inmates across the United States with absolute impunity[.]" (*Id.* at 8). For Defendants' actions, Plaintiff seeks (1) compensation in the amount of $1,275.00 for all costs associated with bringing this action ("filing fees, court cost, time and expense"), (2) an order that Defendants be required to pay $75,000 in punitive damages to a fund for victims of violent crime which is to be administered by a court-appointed victims' advocate, and (3) an order requiring Defendants to return to the exploited inmates all personal letters, all legal documents concerning the inmates' convictions, "all photos, artwork, hand tracings, prison issued IDs, clothing, and craft items signed by an inmate." (*Id.* at 8-9).

## II. Analysis.

### A. Citizenship of Parties.

After reviewing Plaintiff's allegations, the Court finds that his complaint is deficient in several respects, some of which are discussed below. "Federal courts exercise limited subject matter jurisdiction, empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.

1994). Because Congress authorized the federal courts to have jurisdiction over actions based on diversity of citizenship, 28 U.S.C. § 1332, the complaint must affirmatively allege facts establishing the existence of jurisdiction. *Id.* "A federal court is powerless to act without jurisdiction," and should therefore inquire *sua sponte* into its jurisdiction at the earliest stage of the proceedings. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). If the court finds that subject matter jurisdiction is lacking, it is powerless to continue and must dismiss the action for that reason. *Id.*

Diversity-of-citizenship jurisdiction requires that the plaintiff allege the citizenship of each natural person who is a party, showing that the plaintiff and defendants are citizens of different states, and that the amount in controversy exceeds $75,000.[3] 28 U.S.C. § 1332(a)(1); *Taylor*, 30 F.3d at 1367. "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction, . . . [a]nd domicile requires both residence in a state and an intention to remain there indefinitely. . . ." *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (citations omitted). Here, Plaintiff does not indicate the citizenship of any party. He merely states that "Defendants reside in states other than

---

[3] Section 1332(a) provides:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> (1) citizens of different States. . . .

28 U.S.C. § 1332(a).

6

plaintiff[']s" and provides Defendants Miller's and Pride's addresses, Indiana and New York, respectively.  (Doc. 1 at 1-2).  And, even though Plaintiff is incarcerated in Alabama, a prisoner's citizenship generally resides with the state where he was domiciled prior to incarceration.  *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002).  Thus, the complaint's information does not provide Plaintiff's or Defendants' citizenship, nor is Defendant DeathMerchant.com's business structure clearly described in order to determine its requirements for establishing its citizenship.

### B.  Jurisdictional Amount.

Furthermore, a Plaintiff usually is required only to plead an amount adequate to satisfy the amount-in-controversy requirement in good faith.  *Fastcase, Inc. v. Lawriter, LLC*, ___ F.3d ___, 2018 WL 5318148, at *5 (11th Cir. Oct. 29, 2018).  "The plaintiff's good-faith pleading will be second guessed only if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount."  *Id.* (citation omitted) (bracket in original).  In the present case, the complaint's allegations and the request for relief do not support a conclusion that to a legal certainty the controversy exceeds $75,000, exclusive of interest and costs.

Plaintiff began his complaint by informing the Court that incarcerated persons nationwide were being represented by him in this case for fraud.[4]  (Doc. 1 at 2; Doc. 1-1

---

[4] Plaintiff did not seek a class action.

at 1, civil action sheet). This point of view by Plaintiff influenced his pleading of the complaint. That is, very little information is contained in the complaint that is specific to him. The information chiefly conveys what Defendants have done to inmates as a group. The sole exception to this type of pleading is the brief reference to his mother being manipulated by Defendant Miller into disclosing her social security number so online accounts could be established in his mother's name. (Doc. 1 at 6). However, as pled, Plaintiff cannot bring a claim for his mother. *See Kowalski v. Tesmer*, 543 U.S. 125, 129-30, 125 S.Ct. 564, 567-68, 160 L.Ed.2d 519 (2004) (observing the established rule is "a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'" except in a limited circumstance where the relationship is close and a hindrance to protect one's interest is shown).

To ascertain if the amount in controversy exceeds $75,000, Plaintiff's requests for relief must be examined. Plaintiff requests $1,275 as compensation for the costs in bringing this action ("filing fees, court cost, time and expense") (Doc. 1 at 8); $75,000 in punitive damages to be paid to a fund for victims of violent crimes and administered by a court-appointed, victims' advocate; and the return by Defendants of personal items belonging to inmates. (*Id.* at 9).

When injunctive is sought, such as in the request for the return of items held by Defendants but not owned by them, "the amount in controversy is the monetary value

of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. v. McKinnon Motors,* 329 F.3d 805, 807 (11th Cir. 2003) (citation omitted).  That is, "the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir.), *cert. denied,* 531 U.S. 957 (2000).  But the allegations describing the items held by Defendants do not reflect that Plaintiff is the owner of any of the items.  The absence of evidence of ownership by him in any of the described items prohibits the return of an item to him and the item's value being counted toward the amount in controversy.  *Cf. Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (holding that standing consists of three elements on which the plaintiff bears the burden of proof: first, "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . (b) actual or imminent, not conjectural or hypothetical, . . . [s]econd, there must be a causal connection between the injury and the conduct complained of . . . [t]hird, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision").  Without having identified which item(s) belong to him and the value of the item(s), the Court is placed in a position of being required to speculate to make a determination that a certain amount should be counted toward the amount in controversy or that the amount in controversy has been met.  The Court cannot speculate, however, as "a plaintiff who bases diversity jurisdiction on the value of

injunctive relief must show that the benefit to be obtained from the injunction is sufficiently measurable and certain to satisfy the . . . amount in controversy requirement. . . ." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1269 (11th Cir. 2000) (citation omitted); *cf. McKinnon Motors*, 329 F.3d at 807 ("where jurisdiction is based on a claim for indeterminate damages, the *Red Cab Co.* 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum").

Furthermore, Plaintiff requested punitive damages of $75,000. Punitive damages may be considered in determining the jurisdictional amount. *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). But no basis is provided for this punitive-damages request, as Plaintiff has not identified a claim that he has against a Defendant, i.e., he has not identified a specific ownership interest of his that has been impacted by Defendants. *Cf. McCreary v. Ocwen Loan Servicing, LLC*, No. 1:13-CV-2423-RWS, 2013 WL 12208404, at *2 (N.D. Ga. 2013) (unpublished) (*pro se* plaintiff's action failed to meet the diversity jurisdictional amount because punitive damages were not recoverable in a Georgia breach of contract action); *Register v. Rus of Auburn*, 193 F. Supp. 2d 1273, 1280 (M.D. Ala. 2002) (finding diversity jurisdiction did not exist when the jurisdictional amount of $75,000 would be met largely by punitive damages because the compensatory damages would not exceed $2000, which results in

a ratio of 36-1 or 37-1, which transgresses due-process protections); *Ellibee v. Posey*, No. 02-3233-JAR, 2006 WL 1133210, at *8 (D. Kan. 2006) (unpublished) (finding the court lacked diversity-of-citizenship jurisdiction because another court would not award punitive damages in excess of $75,000 in order to meet the jurisdictional amount considering that plaintiff's claim for compensatory damages was $17.83, as the punitive damages would not be reasonable and proportionate).

Finally, Plaintiff's request of $1,275 for the costs of bringing this action ("filing fees, court cost, time and expense") is an amount that is not counted toward the amount in controversy. Section 1332(a) explicitly excludes costs and interest from the $75,000 jurisdictional amount. 28 U.S.C. § 1332(a). Moreover, "[t]he general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *McKinnon Motors,* 329 F.3d at 808 n.4.

Thus, after examining the complaint's allegations and the requests for relief, it appears to the undersigned that "to a legal certainty that the claim is really for less than the jurisdictional amount." *McKinnon Motors*, 329 F.3d at 807.

## III. Conclusion.

"[F]ederal courts are obligated to strictly construe the statutory grant of diversity jurisdiction[.]" *Morrison*, 228 F.3d at 1268. Accordingly, it is Plaintiff's burden to demonstrate in his complaint that the defendants' citizenship is diverse from his

citizenship and that the amount in controversy exceeds $75,000.  *Id.* at 1273.  Because Plaintiff has not satisfied these requirements for diversity-of-citizenship jurisdiction, his action is due to be dismissed without prejudice for lack of subject matter jurisdiction.[5] *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) (dismissal for lack of subject matter jurisdiction is without prejudice).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error

---

[5] A court is required to address first whether it has subject matter jurisdiction, and when the court finds that it lacks subject matter jurisdiction over an action, the court no longer has the power to take further action in the case.  *Travaglio*, 735 F.3d at 1269.  Therefore, the undersigned is foregoing addressing other issues that are present or the merits of the action.

if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this 8th   day of November,  2018.

                                       /s/ Katherine P. Nelson
                                       _____
                                       UNITED STATES MAGISTRATE JUDGE